IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SCOTT ALLEN GODESKY,          )
          Petitioner,         )
                              ) Civil Action No. 03-1705
               v.             ) District Judge Arthur J. Schwab
                              ) Magistrate Judge Susan P. Baxter
FRANK D. GILLIS,              )
          Respondent.         )

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

I. RECOMMENDATION

It is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

II. REPORT

Petitioner, Scott Allen Godesky, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, wherein he challenges his convictions of Murder in the First Degree, Robbery, Abuse of a Corpse, and Criminal Conspiracy. In his Petition, he raises the following claims for relief.

1. Trial counsel was constitutionally ineffective for eliciting and introducing testimony concerning petitioner's prior crimes and the fact that petitioner had been incarcerated, recently released and currently on parole when the instant crimes were committed.

2. Trial counsel was ineffective for compelling petitioner to testify at his trial.

3. Trial counsel Elash, was ineffective for failing to cross-examine Detective McCabe regarding his testimony that petitioner told him that he knew the handgun was loaded at the time of the shooting.

4. Mr. Godesky's due process rights were violated when the prosecutor, Chris Conrad, misstated and misrepresented facts in evidence; gave his

opinion as to what a non-testifying co-defendant would testify to had he testified at petitioner's trial; and stigmatizing petitioner by calling him a "cold-blooded killer."

5. Trial counsel was constitutionally ineffective for failing to object to the improper closing in its entirety.

6. Deleted.

7. Mr. Godesky was denied a fair trial by the Commonwealth's use of perjured testimony by the state's witness, Todd Erfort.

8. Mr. Godesky was denied his Sixth Amendment right to effective assistance of counsel and due process of law when trial counsel, Elash, failed to conduct any pretrial investigations in preparation for trial.

9. Trial counsel was constitutionally ineffective for failing to conduct any pretrial investigations in preparation for the suppression hearing.

10. The prosecution committed misconduct by suppressing an immunity deal given to the state's witness, Todd Erfort, for his testimony.

11. Trial counsel was ineffective for failing to investigate into the aforementioned immunity deal.

12. Trial counsel rendered ineffective assistance in failing to object to the admission of all the gruesome and inflammatory photographs entered into evidence for the jury's viewing.

A. <u>Relevant Facts</u>

The relevant facts are as follows.

On February 28, 1996, David Lehrman invited several people to his house for a party, including appellant [Petitioner] and Brian Mirenna, the victim. At around 11 p.m., the only people remaining at the party were Lehrman, appellant, Mirenna and Todd Erfort. Erfort went upstairs to use the bathroom, leaving Lehrman, appellant and Mirenna sitting in the living room. When Erfort returned, Mirenna was sitting on the couch with Lehrman pointing a shotgun at him and appellant holding a .357 magnum handgun to his head. Lehrman was demanding that Mirenna give him money and

2

his "stash."  When Mirenna told Lehrman to leave him
alone, Lehrman shot Mirenna in his left foot with the
shotgun.  When Mirenna began screaming, appellant fired
the .357 magnum twice at Mirenna's head, striking him
once in the cheek and once just above the ear, killing
him instantly.  At trial, Dr. Leon Rozin, a forensic
pathologist, testified that an additional bullet would
have appeared in Mirenna's left arm, but no other
evidence was produced at trial demonstrating that
appellant fired a third shot at the victim.

After shooting him, appellant and Lehrman moved
Mirenna's body onto the floor and wrapped his head in
a quilt to stop the bleeding.  The two men then took
the money out his pockets and proceeded to drag his
body into the basement of the house.  Once there, they
took the body outside and placed it in the trunk of
Lehrman's car.  Appellant and Lehrman then went back
upstairs and ripped up the blood stained carpet with
Erfort's help.  While Erfort stayed in the living room
and cleaned up, appellant and Lehrman took the carpet
into the basement, cut it into pieces and disposed of
it in several garbage bags.  Upon finishing with the
rug, appellant and Lehrman drove Lehrman's car to a
local cemetery, placed Mirenna's body in the woods, and
covered it with leaves.  The two men then returned to
Lehrman's house.

When they returned, Erfort, who was waiting at the
house, emptied the .357 magnum, disposed of the
bullets, and wiped the gun clean. He then wrapped the
gun in Saran Wrap, and all three men drove to a wooded
area and threw the gun into a pond.  They returned from
disposing the gun at around 9:30 a.m. on February 29,
1996.  That evening, all three men met again at
Lehrman's house and then traveled to the cemetery to
dispose of Mirenna's body.  Upon finding the ground too
hard to dig, they departed and left the body there
again overnight.

The following day, the three men met at
appellant's house and decided that it would be easier
to dispose of the body if they cut it into pieces.  At
around midnight, they headed back to the cemetery to
try to dispose of the body again.  Once they relocated
the body, appellant and Lehrman took the body out of
the woods and started cutting Mirenna's body into
pieces while Erfort started digging a hole.  After
dismembering Mirenna's body, appellant and Lehrman
placed the torso into the hole Erfort had dug and
buried it.  They put Mirenna's limbs and head into
garbage bags and placed them in the trunk of Lehrman's
car.  Appellant and Lehrman dropped Erfort off at his
home and proceeded to Moraine State Park where they
buried the remains in two separate grave sights [sic].

3

On April 22, 1996, a man discovered Mirenna's remains while walking his dog through Moraine State Park. State and local police were notified immediately. Following an investigation, appellant and Lehrman were arrested and charged with criminal homicide, robbery, abuse of a corpse and Conspiracy.n.1

1. Todd Erfort received immunity from prosecution as a result of his cooperation with police during their investigation and his agreement to testify at trial for the Commonwealth.

Prior to trial, appellant filed a motion to sever, which Judge Cercone granted. At trial, appellant argued that he accidentally shot Mirenna when Lehrman tried to take the gun from him. However, the jury found appellant guilty on all counts, and he was sentenced to life imprisonment plus twenty-one (21) to forty-two (42) years imprisonment.

Sup. Ct. Op. (December 18, 1998) (Commw. Ex. 18 at 1-4).

Thereafter, on May 5, 1997, through newly-appointed counsel from the Office of the Public Defender, Petitioner filed a Notice of Appeal to the Superior Court of Pennsylvania. On November 3, 1997, Petitioner filed his Concise Statement of Matters Complained of on Appeal. On January 22, 1998, Judge Cercone filed his Opinion denying Petitioner's points on appeal and affirming his judgment of sentence. Commw. Ex. 15. In his Brief filed on June 9, 1998 (Commw. Ex. 17), Petitioner raised the following claims.

1. Appellant was denied a fair trial by the prosecutor's closing remarks.

2. Trial counsel was ineffective for failing to object to the prosecutor's improper closing remarks.

On December 18, 1998, the Superior Court of Pennsylvania affirmed the judgment of the Court of Common Pleas. Commw. Ex. 18. Petitioner filed a Petition for Allowance of Appeal, which was denied by the Supreme Court of Pennsylvania on April 26,

4

1999.

On March 9, 2000, Petitioner filed a pro se Petition pursuant to the Pennsylvania Post Conviction Relief Act (PCRA), 42 Pa. Cons. Stat. Ann. §§ 9541 et. seq. Appointed counsel filed an Amended Petition (Commw. Ex. 22.) on June 15, 2001, which raised the following claims.

1.  Appellate counsel gave ineffective assistance for failing to claim that trial counsel gave ineffective assistance when trial counsel failed to discuss the significance of character testimony and/or character evidence.

2.  Appellate counsel gave ineffective assistance for failing to claim that trial counsel gave ineffective assistance for failing to present Richard Godesky and Kim Godesky as character witnesses to show his non-violent character.

3.  Appellate counsel gave ineffective assistance for failing to claim that trial counsel gave ineffective assistance for failing to request a specific instruction concerning the fact that voluntary intoxication can reduce a first degree murder to third degree murder.

4.  Appellate counsel gave ineffective assistance for failing to claim that trial counsel gave ineffective assistance for failing to object to the prosecutor's closing remark when the prosecutor asked the jury what they believed Lehrman would have testified to.

Following an evidentiary hearing held on December 17, 2001, on January 11, 2002, the PCRA Court denied Petitioner's PCRA Petition. Commw. Ex. 25. Petitioner filed a timely Notice of Appeal and on August 26, 2002, Judge Cercone filed his Opinion denying Petitioner's claims on the merits. Commw. Ex. 35. On July 12, 2002, Petitioner filed his Brief in the Superior Court (Commw. Ex. 37) wherein he raised the following issues.

1.  Was trial counsel ineffective for introducing

5

evidence regarding Appellant's prior crimes and the fact that Appellant had been incarcerated and released from jail shortly before the instant crimes were committed? Were PCRA counsel Tom Farrell, Esquire and appellate counsel James Wilson, Esquire ineffective for failing to raise trial counsel's ineffectiveness?

2. Was trial counsel ineffective for compelling Appellant to testify at his trial? Defendant did not desire to testify, yet he felt constrained after trial counsel John Elash, Esquire told him that it would be preferable if he testified since Elash wanted to elicit testimony tending to show that Appellant's prior crimes were insubstantial. Were PCRA counsel Tom Farrell, Esquire and appellate counsel James Wilson, Esquire ineffective for failing to raise trial counsel's ineffectiveness?

3. Was trial counsel Elash ineffective for failing to cross-examine Detective McCabe regarding his testimony that Defendant-Appellant McCabe that he knew that the handgun, that Appellant held to victim Brian Mirenna's head, was loaded at the time? Were PCRA counsel Tom Farrell, Esquire, and appellate counsel James Wilson, Esquire ineffective for failing to raise trial counsel's ineffectiveness?

4. Was trial counsel Elash was ineffective for failing to object to Prosecutor Conrad's statements, in closing argument, regarding his opinion as to what David Lehrman might have testified to if he had testified to if he had testified at Appellant's trial (Mr. Lehrman was not present at and did not testify at Appellant's trial). Were PCRA counsel Tom Farrell, Esquire, appellate counsel James Wilson, Esquire ineffective for failing to raise trial counsel's ineffectiveness?

5. Did A.D.A. Conrad committed prosecutorial misconduct by giving his opinion as to what David Lehrman might have testified to if he had testified to if he had testified at Appellant's trial? Mr. Conrad also misstated facts when he stated in closing that Appellant cut up Mirenna's body yet there was no testimony to that effect (Erfort never saw who did the cutting, and Appellant always maintained that Lehrman did the cutting) and that Appellant was the one who threw the gun into the pond to get rid of it yet Erfort admitted at trial that he was the one who threw the gun into the pond. Additionally, Conrad inferred to the jury that Appellant was the only

6

one who wanted to get rid of the handgun yet all three men (Lehrman, Erfort, and Appellant) drove to Harmony, PA to dispose of the gun, Lehrman had Erfort wipe prints off of the gun and wrap it in plastic wrap, and, the gun belonged to Lehrman. Moreover, Mr. Conrad referred to Appellant as a "cold-blooded killer", strongly prejudicing Appellant. Conrad also stated that Appellant put the gun to Mirenna's head when he fired the gun, yet there was never any testimony that Appellant held the gun any closer than a few feet from the victim's head. In sum the overall character and substance of the prosecutor's frequently improper closing argument prejudiced Appellant. Moreover, trial counsel Elash was ineffective for failing to object to any of the aforementioned prosecutorial misconduct, and PCRA counsel Tom Farrell, Esquire and appellate counsel James Wilson were ineffective for failing to raise trial counsel's ineffectiveness.

6.   Was the instant verdict against the weight of the evidence? Was Mr. Elash was ineffective for failing to raise a weight of the evidence claim in post trial motions, and PCRA counsel Tom Farrell, Esquire, and appellate counsel James Wilson, Esquire ineffective for failing to raise trial counsel's ineffectiveness?

On April 16, 2003, the Superior Court affirmed the judgment of the Court of Common Pleas of Allegheny County. Commw. Ex. 38. On September 23, 2003, the Supreme Court of Pennsylvania denied his Petition for Allowance of Appeal.

Petitioner filed his federal petition for writ of habeas corpus in this Court on November 7, 2003. On December 4, 2003, petitioner filed a *pro se* Motion to Withdraw Petition for Writ of Habeas Corpus Without Prejudice so that he could pursue state court remedies with respect to unexhausted claims. On December 5, 2003, District Judge Arthur J. Schwab granted Petitioner's motion to withdraw petition.

On November 25, 2003, Petitioner filed a second *pro se* Motion for Post Conviction Collateral Relief in the Court of

7

Common Pleas of Allegheny County (Commw. Ex. 43).  In his second petition, Petitioner raised the following claims:

1. Trial counsel, John Elash, Esquire, rendered constitutionally ineffective assistance for failing to investigate in and beyond the prosecution's file to determine the extent of any alleged Deal(s) made to the Commonwealth's witness, Todd Erfort, in exchange for his testimony against petitioner at trial.  Trial counsel's sole inquiry into this area consisted of his cross-examination of this witness and Erfort's denials of any deal(s) being made (N.T., at 275-281).  However, Erfort stated his understanding was that he would not be charged if he cooperated, but he could still be charged.  Erfort never admitted to any <u>immunity deal</u>.

2. The prosecution committed a Brady violation by failing to disclose an immunity deal to it's star witness, Todd Erfort, in exchange for, and contingent upon, his testimony against petitioner at trial.  In violation of petitioner's Fourteenth Amendment right to due process of law.  Erfort's testimony was vital to the Commonwealth's ability to gain a conviction against petitioner.  The demands of due process require the prosecution to make available to the defense any exculpatory evidence.  The suppression of said evidence was a flagrant violation of petitioner's due process rights.

3. Trial counsel was constitutionally ineffective for failing to investigate in and beyond the prosecutions file as to petitioner's co-defendant's constant bragging about having committed the instant murder, without ever implicating petitioner.

4. Trial counsel was completely ineffective for failing to investigate into, and present witnesses known to him, which would have furthered Richard Godesky's suppression testimony concerning the illegal police conduct and overall manifest attitudes of the police.

5) Trial counsel was constitutionally ineffective for failing to obtain, by subpoena or otherwise, petitioner's parole file and records, for proper impeachment or Parole Agent Novak, in which he falsified testimony to the suppression court, prejudicing petitioner to a fair hearing of suppression.

8

6. Trial counsel rendered constitutionally ineffective assistance for failing to object to all the gruesome and inflammatory photographs.

7. Trial counsel was constitutionally defective for failing to investigate into and present a defense of duress.

8. Newly ad/or after discovered evidence which goes directly to the truth determining process.

9. Pennsylvania's Post Conviction Relief Act's 42 Pa.C.S.A. §9545(b), is unconstitutional in that it prevents a petitioner from being able to challenge all prior counsel's effectiveness and further presupposes that a petitioner, by this stage in the appellate process, has had constitutionally meaningful and effective representation at trial and on his appeals.

Petitioner's case was transferred to the Honorable Lester G. Nauhaus after Judge Cercone became a United States District Court Judge. On June 8, 2004, Judge Nauhaus dismissed the petition as untimely (Commw. Ex. 45). Petitioner filed a *pro se* Notice of Appeal and on September 1, 2004, Judge Nauhaus filed his opinion (Commw. Ex. 50). On June 15, 2005, the Superior Court affirmed the judgment of the PCRA Court held the petition to be untimely (Commw. Ex. 53). On July 12, 2005, Petitioner filed a *pro se* Petition for Allowance of Appeal in the Supreme Court of Pennsylvania, which was denied by that Court on October 26, 2005 (Commw. Ex. 56).

On November 7, 2005, Petitioner filed a *pro se* Motion to Reinstate Petition for Writ of Habeas Corpus, which was granted by Judge Schwab on December 5, 2005. On March 6, 2006, Petitioner filed a pro se Memorandum of Fact and Law in Support of his Petition for Habeas Corpus.

9

## B. Exhaustion Requirement

The provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief. To comply with the exhaustion requirement, a state prisoner first must have fairly presented his constitutional and federal law issues to the state courts through direct appeal, collateral review, state *habeas* proceedings, *mandamus* proceedings, or other available procedures for judicial review. *See, e.g.*, Castille v. Peoples, 489 U.S. 346, 351 (1989); Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996); Burkett v. Love, 89 F.3d 135, 137 (3d Cir. 1996).

It appears that the Petitioner has presented some of his claims to the Pennsylvania courts through his direct appeal and his PCRA proceedings. Moreover, it is clear that Petitioner has not demonstrated that he is entitled to federal habeas corpus relief with respect to any of his claims. Accordingly, this Court will review the Petitioner's claims under the authority granted in 28 U.S.C. § 2254(b)(2), which provides that a federal court may deny a petitioner's claims on the merits notwithstanding a petitioner's failure to comply with the exhaustion requirement. *See* 28 U.S.C. § 2254(b)(2) (as amended by The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 142 Cong. Rec. H3305-01 (1996).[1]

---

1. The Respondent argues that the Petition is time barred under the AEDPA one-year statute of limitations. However, this Court stayed the petition filed on November 7, 2003 and allowed Petitioner to reinstate it as filed. Thus, the Petition was
(continued...)

C. <u>Standard of Review</u>

Section 2254 of the federal habeas corpus statute provides the standard of review for federal court review of state court criminal determinations.  28 U.S.C. § 2254.  Specifically, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence.  28 U.S.C. § 2254(e).  Where a state court's factual findings are not made explicit, a federal court's "duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it." <u>Campbell v. Vaughn</u>, 209 F.3d 280, 289 (3d Cir. 2000).  In determining what implicit factual findings a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly.  *Id.* (citing <u>Marshall v. Lonberger</u>, 459 U.S. 422, 433 (1982)).

A federal court may not issue the writ unless it concludes that the state court's adjudication resulted in a decision that was "contrary to," or an "unreasonable application of," clearly established federal law as determined by the Supreme Court of the United States.  28 U.S.C. § 2254(d)(1).  In <u>Williams v. Taylor</u>, 529 U.S. 362 (2000), Justice O'Connor, writing the opinion of the Court for Part II, discussed the independent meanings of the "contrary to" and "unreasonable application" clauses contained within section 2254(d)(1).

---

1.  (...continued)
filed within the one-year limitations period.

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 411-13.  *See also* Lockyer v. Andrade, 538 U.S. 63 (2003).

Where the state court fails to adjudicate or address the merits of a petitioner's claims, the federal habeas court must conduct a *de novo* review over pure legal questions and mixed questions of law and fact.  Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001).


D. Ineffective Assistance of Counsel

Several of Petitioner's claims assert ineffectiveness of trial counsel and appellate counsel.  The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial."  Lockhart v. Fretwell, 506 U.S. 364, 368 (1993) (*quoting* Strickland v. Washington, 466 U.S. 668, 684 (1984)). *See also* Kimmelman v. Morrison, 477 U.S. 365, 374 (1986) (the essence of a claim alleging ineffective assistance is whether counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect).

The Supreme Court has formulated a two-part test for

12

determining whether counsel rendered constitutionally ineffective assistance:  1) counsel's performance was unreasonable; and 2) counsel's unreasonable performance actually prejudiced the defense.  <u>Strickland</u>, 466 U.S. at 687. The first prong of the <u>Strickland</u> test requires a defendant to establish that his attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment.  <u>Strickland</u>, 466 U.S. at 688.  The second prong requires a defendant to demonstrate that counsel's errors deprived him of a fair trial and the result was unfair or unreliable.  <u>Strickland</u>, 466 U.S. at 689.  A defendant is not entitled to relief unless he makes both showings.  *Id*. at 687.

In analyzing Godesky's claims under the two-part test announced in <u>Strickland</u>, this Court must apply the standards set forth in section 2254(e) concerning the presumption of correctness applicable to state court factual findings.[2]  The question of effectiveness of counsel under <u>Strickland</u> is a mixed question of law and fact; it requires the application of a legal standard to the historical, fact determinations.  <u>Berryman</u>, 100 F.3d at 1095.  In this regard, a state court's finding that counsel had a trial strategy is a finding of fact to which the

_____

2.  State court findings of fact concerning an ineffective assistance of counsel claim are subject to the statutory presumption in section 2254(d).  <u>Berryman v. Morton</u>, 100 F.3d 1089, 1095 (3d Cir. 1996).  Factual issues to which the presumption applies are "basic, primary or historical facts: facts in the sense of a recital of external events and the credibility of their narrators."  *Id*., 100 F.3d at 1094 (internal quotations and citations omitted).

presumption applies.    *Id*.    Likewise, a state court's
determination that a decision was a tactical one is a question of
fact.   *Id*.


### E. Admission of Prior Crimes

Petitioner's first ineffectiveness claim asserts that trial
counsel was ineffective for eliciting and introducing testimony
concerning his prior crimes and the fact that he had been
incarcerated and recently released on parole when the crimes were
committed.   In its review of this claim, the Superior Court
determined that trial counsel had a reasonable trial strategy for
referring to Petitioner's prior crimes because the people at
Lehrman's party were all good friends and he wanted to show that
Petitioner was an easy target to blame for the homicide because
no one of the tightly knit group of friends knew anything about
him at all, except that he had just gotten out of jail and had
begun to hang out with David Lehrman shortly before the victim's
death.   In this regard, the Superior Court held as follows.

> Godesky first argues that his trial counsel was
> ineffective for introducing evidence regarding his
> prior crimes and that his direct appeal counsel and
> PCRA counsel were ineffective for failing to raise
> trial counsel's ineffectiveness for introducing
> evidence regarding his prior crimes.
>
> . . .
>
> Here the record indicates that trial counsel
> attempted to show that Godesky was an easy target to
> blame for the crimes.   To support this theory, trial
> counsel employed a strategy by which he elicited
> testimony from Detective Robert McCAbe, Commonwealth
> witness Todd Erfort ("Erfort"), defense witness William
> Kuhn, and Godesky that Godesky had recently been
> released from prison and was not well known by the
> victim and his friends.   Godesky did not demonstrate
> that, had trial counsel not elicited testimony

14

regarding his recent release from prison, he would not
have been found guilty. Accordingly, trial counsel was
not ineffective when he elicited evidence of Godesky's
imprisonment to support his theory that Godesky was an
easy target to blame for the crimes. Moreover, where
it is shown that trial counsel was not ineffective with
respect to a particular issue, post-trial counsel has
no reasonable grounds upon appeal with respect to a
particular issue, post-trial counsel has no reasonable
grounds   upon   which   to   assert   trial   counsel
ineffectiveness upon appeal with respect to that issue.
Godesky's first claim, therefore, fails.

Commw. Ex. 38 at 9-10 (internal citation and footnote omitted).

This Court is required to accept the Superior Court's
factual findings unless Petitioner establishes by clear and
convincing evidence that the factual determinations by the PCRA
Court were erroneous. 28 U.S.C. § 2254(e). He has not met this
burden. Nor has he demonstrated that the Superior Court's
decision is contrary to, or an unreasonable application of,
clearly established federal law as determined by the Supreme
Court of the United States. Consequently, Petitioner is not
entitled to relief with respect to this claim.

### F. Compelling Petitioner to Testify

Next, Petitioner claims that his trial counsel rendered
ineffective assistance for compelling Petitioner to testify at
his trial. During his PCRA proceeding, the Superior Court
disagreed.

Next, Godesky argues that his trial counsel was
ineffective for compelling him to testify at his trial
and that direct appeal counsel and PCRA counsel were
ineffective for failing to raise trial counsel's
ineffectiveness for compelling him to testify at his
trial. Our review of the record, however, reveals that
Godesky voluntarily testified. Indeed, before Godesky
testified, his trial counsel informed the trial court
at a sidebar: "I have had a conversation with my
client, and it is his desire to testify in this

15

matter." TT at 492.  Moreover, as we described above,
Godesky's testimony was crucial to trial counsel's
theory that Godesky had recently been released from
jail prior to the murder and was, therefore, an easy
target to blame. Accordingly, we find that Godesky's
trial counsel was not ineffective.  As with the first
issue, since successor counsel cannot be deemed
ineffective for failing to preserve and litigate a
meritless claim, Godesky's second claim fails.

Commw. Ex. 38 at 11.

The Superior Court found that Petitioner voluntarily
testified.  Petitioner has not demonstrated that this finding is
not supported by the record.  As such, this Court must accept
this finding unless Petitioner submits clear and convincing
evidence to the contrary.  Petitioner's mere assertion to the
contrary is insufficient to overcome this finding.  Consequently,
Petitioner is not entitled to relief with respect to this claim.

### G. Cross Examination of Detective McCabe

Petitioner's next claim is that trial counsel Elash was
ineffective for failing to cross-examine Detective McCabe
regarding his testimony that Petitioner told him that he knew the
handgun was loaded at the time of the shooting.  Petitioner is
not entitled to relief on this basis as Erfort and Petitioner
both testified that many people witnessed Lehrman firing the
handgun into a wall of his house within an hour of the time
Petitioner shot the victim.  Detective McCabe testified as to
Petitioner's voluntary statement to the police regarding the
events leading up to the victim's death.  In the statement,
Petitioner told the police that he was at a party at Lehrman's
house when Lehrman told him that he intended to rob the victim,
Brian Mirenna, a known drug dealer, of his stash.  Lehrman

16

handed a .357 Magnum to Petitioner, the same gun Lehrman fired a bullet into a wall earlier that evening.  TT. 414.  Lehrman then pulled a sawed-off shotgun from under a coffee table, pointed it at Mirenna and yelled "give it up."  Mirenna said he did not know what he was talking about and Lehrman shot him in the foot.  Then, Lehrman started screaming at Petitioner to give him the gun.  Lehrman then reached for the .357 Magnum Petitioner was holding approximately a foot from the victim's head, and the gun went off, striking the victim in the left side of the head and killing him. TT. 415.  Petitioner told Detective McCabe that the victim fell to the floor and he put towels on his head while Lehrman went through the victim's pockets and removed approximately $1,200 to $1,400 and some cocaine. (TT 418-419).  This testimony was the same as that provided by Todd Erfort, which indicated that Petitioner had reason to know the gun was loaded because Lehrman had fired a bullet into the wall earlier in the evening.

In its review of the claim, the Superior Court held as follows.

> Next, Godesky argues that his trial counsel was ineffective for failing to cross-examine Detective McCabe with respect to Detective McCabe's testimony that Godesky told him that he knew that the handgun that Godesky held to the victims' head was loaded. Godesky argues his direct appeal counsel and PCRA counsel were also ineffective for failing to raise trial counsel's ineffectiveness with respect to this issue. Our review of the record reveals that Detective McCabe's testimony that Godesky told him that the handgun that Godesky held to the victim's head was loaded was corroborated by Godesky's own testimony.
>
> . . .
>
> Since Godesky's testimony indicates that he knew that the handgun that he held to the victim's head was

>loaded, trial counsel was not ineffective for failing
>to cross-examine Detective McCabe with respect to his
>testimony that Godesky told him that the handgun that
>he held to the victim's head was loaded.  This claim is
>meritless and resulted in no prejudice to Godesky.
>Again since successor counsel cannot be deemed
>ineffective for failing to preserve and litigate a
>meritless claim, Godesky's third claim fails.

Commw. Ex. 38 at 13-14.

Petitioner has not demonstrated that the Superior Court's decision is contrary to or an unreasonable application of Supreme Court precedent.  Consequently, he has not demonstrated that he is entitled to relief with respect to this claim.

### H. Closing Argument - Prosecutorial Misconduct

Petitioner's fourth and fifth claims pertain to the prosecutor's closing remarks, which Petitioner asserts amounted to prosecutorial misconduct entitling him to a new trial. Specifically, Petitioner claims that his due process rights were violated when the prosecutor, Chris Conrad, misstated and misrepresented facts in evidence; gave his opinion as to what a non-testifying co-defendant would testify to had he testified at Petitioner's trial; and stigmatizing Petitioner by calling him a "cold-blooded killer."  Further, he claims that trial counsel was constitutionally ineffective for failing to object to the improper closing in its entirety.

Allegations of prosecutorial misconduct are reviewed under the standards for fundamental fairness as guaranteed under the Due Process Clause.  Darden v. Wainwright, 477 U.S. 168, 181 (1986); Smith v. Phillips, 455 U.S. 209, 219 (1982).  To constitute a due process violation, the prosecutorial misconduct

18

must be " 'of sufficient significance to result in the denial of the defendant's right to a fair trial.' "  <u>United States v. Bagley</u>, 473 U.S. 667, 676 (1985) (quoting <u>United States v. Agurs</u>, 427 U.S. 97, 108 (1976)).  The relevant question is whether the prosecutors' comments so infected the trial with unfairness so as to make the resulting conviction a denial of due process.  <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974).  In making this determination, the statements or conduct at issue cannot be viewed in isolation.  Rather, a court must assess the strength of the evidence against the defendant and decide whether the prosecutor's statements plausibly could have tipped the scales in favor of the prosecution.  <u>United States v. Young</u>, 470 U.S. 1, 11 (1985).  In other words, "the court must consider the probable effect the prosecutor's [statements] would have on the jury's ability to judge the evidence fairly." *Id*.  Moreover, a prosecutor's statement regarding the credibility of a witness can constitute grounds for reversal only if the defendant can show that he was prejudiced by those comments.  <u>United States v. Swinehart</u>, 617 F.2d 336, 339 (3d Cir. 1980).  A determinative factor in this analysis is whether the prosecutor's comments suggested that he or she had knowledge of evidence other than that which was presented to the jury.  <u>Buehl v. Vaughn</u>, 166 F.3d 163, 176 (3d Cir. 1999) (citations omitted).

The closing remarks Petitioner takes issue with are as follows.

> Good morning.  For some reason I think I should start my closing remarks by apologizing to Scott Allen Godesky.  We have the wrong guy.  Bring on David Lehrman.  Petitioner should go home I guess, probably even shouldn't have inconvenienced him with a trial of

this type.  We understand he reflexively took the gun
from Mr. Lehrman and that he reflexively held it to the
head of Brian Mirenna.  We understand his panic after
this death, and but at the direction and the prodding
of David Lehrman that he disposed of  – cut the body
up, disposed of it, disposed of the rug, bought new
carpet, scrubbed the floors, threw the gun into a pond.
We understand all of that.  Accept our apology.  We
were wrong.

Do you think that's an uncommon defense in a case
like this? What do you think a man like David Lehrman
is going to say?  He's going to say, I didn't know what
was going on.  I didn't know what was happening. Scott
Godesky  just pulled the gun out and shot him.  I was
shocked and I got scared, and I helped him cover it up.
That happened in my place.  Brian Mirenna bled on my
carpet.  So, yeah, I helped with the gun and get [sic]
rid of Brian.  I had to buy new carpet, so I had to use
the money.  Not an uncommon defense.

In its review of this claim, the Superior Court held as

follows.

Godesky's fourth and fifth arguments involve
whether his trial counsel was ineffective for failing
to object to statements made during the Commonwealth's
closing argument.  Godesky argues that direct appeal
and PCRA counsel were ineffective for failing to raise
trial counsel's ineffectiveness.  A prosecutor may
properly comment on the evidence and is permitted to do
so with reasonable oratorical flair.  Moreover, a
prosecutor is entitled to respond to the credibility of
defense counsel and a prosecutor may comment on defense
counsel's strategy.  The prosecution must have a degree
of latitude in advocating its position because we must
not lose sight of the fact that the trial is an
adversary proceeding.  On review, comments by the
prosecutor must be considered in the context of the
entire summation.  A prosecutor's language during
closing argument will not constitute reversible error
unless its unavoidable effect would be to prejudice the
jury, forming in their minds, fixed bias and hostility
toward the defendant, so they could not weigh the
evidence and render a true verdict.  . . .

Godesky argues that he was prejudiced when the
prosecutor referenced what co-defendant Lehrman might
have testified to if he had been at Godesky's trial.
As we indicated above, a prosecutor may comment on
defense counsel's strategy.  Our review of the record
reveals that Godesky's trial counsel attempted to show
that Godesky was an easy target to blame for the murder
since Godesky had recently been released from jail and

20

> since Godesky was not well known by the victim and his
> friends and that co-defendant Lehrman was to blame for
> the murder. . . . Since the prosecutor's statements
> regarding what co-defendant Lehrman might have
> testified to had he been at Godesky's trial were in
> response to Godesky's trial counsel's strategy, they
> were permissible. Therefore trial counsel was not
> ineffective for failing to object, and successor
> counsel were not ineffective for failing to preserve
> and litigate this meritless claim.

Commw. Ex. 38 at 15-16 (internal quotations and citations omitted).

Petitioner has failed to demonstrate how the prosecutor's statements, viewed in light of all of the testimony, could have affected the fundamental ability of the jury to weigh the evidence fairly. Thus, he has failed to demonstrate that the Superior Court's determination was contrary to, or involved an unreasonable application of, clearly established federal law. Nor has he demonstrated that the Superior Court's determination was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, he is not entitled to habeas corpus relief as to this claim. *See* Buehl, 166 F.3d at 176 (prosecutor's closing argument that expressed personal opinion regarding defendant's guilt did not entitle defendant to habeas corpus relief; prosecutor's statements did not suggest that prosecutor possessed evidence of guilt other than that which had been presented but merely expressed belief that evidence presented to jury was credible); United States v. Gross, 961 F.2d 1097, 1108 (3d Cir.), *cert. denied*, 506 U.S. 965 (1992).

Petitioner also complains that the prosecutor incorrectly stated that: it was Petitioner who dismembered the victim's

body; Petitioner put the murder weapon "directly" to the victim's head; Petitioner threw the murder weapon in a pond; and Petitioner was a "cold-blooded" killer.  The prosecutor's remarks at issue in these claims are as follows.

> . . . And what happened to Brian Mirenna after his death as it relates to the state of mind of the individuals who took his life, especially Scott Godesky, can't be kept separate.  You are not allowed to keep them separate.  They are integral to the state of mind of Scott Godesky when he pulled the trigger, pumped the bullet, at least one, into Brian Mirenna's head.  The defendant would like nothing better that to have you forget that promptly after Brian Mirenna was shot four times – he would like you to forget they removed the body, took immediate steps to cover their tracks over a three-day period.  Three days.  This wasn't just something that, well, they panicked for a second and said, we got to get this body out of here.  It was much more than that.  Three days.  He did things to cover his tracks.  Took the body out, cut up the carpet, carried the body to a cemetery, took pains to drive an hour away to throw the gun, the gun that he had used, into a creek that he knew where it was.

> Why didn't he care about the shotgun?  The shotgun wasn't his weapon.  The .357 was.  It wasn't going to be found somewhere in the Pittsburgh area.  It might be traced to him.  So he gets rid of it.  That's consciousness of guilt.  That shows what his involvement in that particular murder was.

> Maybe – you know what he says, I thought I committed a murder, and the Commonwealth's response is, yes, you did.  That's exactly right. You did.  Nothing he said in this since then has ever changed that particular fact.  Is that a remark of an innocent man?  If indeed it happened like he said, that he had no idea a robbery was taking place, thought it was a joke, reflexively grabbed the gun and had the great misfortune to be holding it to the temple of Brian Mirenna when David Lehrman grabbed it, then David finished him off with another shot, if it happened that way, what is he doing spending three days there at David Lehrman's house hiding everything he did?  Is that the mark of an innocent man or somebody who is involved in an accident, in a joke, or is it the mark of a cold-blooded killer who in between goes home, rests, drinks, continues to drink.  Is this the mark of an innocent man who had nothing to do with this taking the blood money?  If he had nothing to do with the robbery, thought it was a joke, had nothing to do with

22

the actual shooting, why when that money is held out
doesn't he say, oh no, no, I have had enough of this.
I'm going home.  No tears then.  His tears were few.

TT. 613-616.

The Superior Court thoroughly reviewed each of these claims.

Godesky also argues that he was prejudiced when
the prosecutor stated that Godesky cut up the victim's
body since Erfort did not see Godesky cutting up the
body.  As we indicated above, a prosecutor may properly
comment on the evidence and is permitted to do so with
reasonable oratorical flair.   The prosecutor may
likewise argue based on the reasonable inferences
arising from the evidence adduced at trial.   Erfort
testified that Godesky and co-defendant Lehrman told
him to dig a grave for the victim, and, while he was
digging, Godesky and Lehrman were directly behind him
cutting off the victim's clothes, dismembering his
body, and placing the body parts into bags.  Since the
prosecutor's comments that Erfort helped cut up the
victim's body were based on the evidence and the
inferences arising from it, they were permissible.
Therefore, trial counsel was not ineffective for
failing to object these statements, and successor
counsel were not ineffective for failing to preserve
and litigate this meritless claim.

Godesky also argues that he was prejudiced when
the prosecutor stated that Godesky threw the gun used
to kill the victim into a pond since Erfort admitted
that he was the one who threw the gun into the pond.
As we indicated above, a prosecutor may properly
comment on the evidence and the inferences arising
therefrom and is permitted to do so with reasonable
oratorical flair.   The prosecutor's comments must be
considered in the context of the entire summation.

Although Erfort testified that he, not Godesky,
threw the gun into the pond, Erfort testified that
Godesky was directly involved in the disposing of the
gun, for it was Godesky who drove him and co-defendant
Lehrman to the pond.  Moreover, although the comments
that it was Godesky who threw the gun into the pond may
not have been completely accurate, they were fleeting,
when viewed in context of a closing argument that
consists of sixteen and a half pages of transcript.
Therefore, the comments did not prejudice the jury,
forming in their minds a fixed bias and hostility
toward Godesky such that they could not weigh the
evidence objectively and render a true verdict.

Godesky also argues that he was prejudiced when
the prosecutor stated that he was the only one who

23

wanted to get rid of the gun.  Our review of the record
reveals that the prosecutor never stated in his closing
argument that Godesky was the only one who wanted to
get rid of the gun.  Therefore, trial counsel was not
ineffective for failing to object to the statement, and
successor counsel were not ineffective for failing to
preserve and litigate this claim.

Godesky also argues that he was prejudiced when
the prosecutor stated that Godesky is a "cold-blooded
killer."  Our review of the record, however, reveals
that the prosecutor did not specifically state that he
thought Godesky was a cold-blooded killer.  Instead,
the prosecutor['s . . . statement] was clearly within
the bounds of reasonable oratorical flair and did not
prejudice the jury against Godesky.  Since the
prosecutor left it for the jury to determine whether
Godesky was a "cold-blooded killer," trial counsel was
not ineffective for failing to object to this
statement. Moreover, since successor counsel cannot be
deemed ineffective for failing to preserve and litigate
a meritless claim, this claim fails.

Finally, Godesky argues that he was prejudiced
when the prosecutor stated that Godesky put a gun to
the victim's head. As we indicated above, a prosecutor
may properly comment on the evidence and the inferences
arising from it and is permitted to do so with
reasonable oratorical flair.  Erfort testified that
Godesky held the gun within one to two feet of the
victim's head.  Dr. Leon Rozin, the Commonwealth's
forensic pathologist, testified that the fatal sot was
at close range and likely from a few inches away.
Since the prosecutor's comment that Godesky put a gun
to the victim's head was based on the evidence, it was
permissible.  Trial counsel was not ineffective for
failing to object to this statement, and successor
counsel were not ineffective for failing to preserve
and litigate this meritless claim.

Commw. Ex. 38 at 17-20.

Again, Petitioner has failed to demonstrate how the
prosecutor's statements, viewed in light of all of the testimony,
could have affected the fundamental ability of the jury to weigh
the evidence fairly.  Thus, he has failed to demonstrate that the
Superior Court's determination was contrary to, or involved an
unreasonable application of, clearly established federal law.
Nor has he demonstrated that the Superior Court's determination

24

was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, he is not entitled to habeas corpus relief as to this claim.

## I. <u>Denial of Fair Trial - Perjured Testimony</u>

In his seventh claim, Petitioner claims that he was denied a fair trial by the use of perjured testimony by the Commonwealth's witness, Todd Erfort. In support of this claim, he has attached an affidavit from a Jason Davis, which indicates that Erfort bragged to other individuals that he and Lehrman killed Mirenna. This affidavit does not afford Petitioner relief for several reasons. First and foremost, Petitioner himself testified that he shot Mirenna, although it was an accident that happened while Lehrman was grabbing for the gun. Obviously, the jury did not believe this story. Second, as the Superior Court noted, the affidavit is inadmissible hearsay. Third, the defense offered the testimony of William Kuhn, who testified that Erfort bragged about the homicide. (TT 448). Finally, the affidavit does not mention Petitioner at all; nor does it provide exculpatory evidence that exonerates him in any way from participation in the murder.

Petitioner recently submitted another affidavit from David Newman dated October 21, 2006. In his affidavit, Newman avers that he saw Lehrman in March of 1996 in the Foodland parking lot. At that time, Lehrman offered to sell him some guns that were in his trunk. When Newman asked Lehrman what he thought about Mirenna, Lehrman said that "he got his" and that he (Lehrman) was

the real OG (original gangster) and Mirenna was only the beginning and if anyone screwed with him, they would end up the same way.  When asked if he killed Mirenna, Lehrman said "yeah."

Again, this affidavit does not afford Petitioner relief for several reasons.  First, Petitioner testified that he shot Mirenna.  Whether or not Lehrman also shot Mirenna, since he had four gunshot wounds and Petitioner only confessed to one of them, does not exonerate Petitioner.  Second, the affidavit is inadmissible hearsay.  Finally, the affidavit does not mention Petitioner at all.  This affidavit does not provide exculpatory evidence that exonerates Petitioner in any way from participation in the murder.  Thus, Petitioner has not demonstrated that he is entitled to habeas corpus relief on the basis of these two affidavits.

J. <u>Failure to Conduct Adequate Pre-Trial Investigation</u>

Godesky next claims that trial counsel rendered ineffective assistance by failing to conduct any pretrial investigations in preparation for trial.  Specifically, Petitioner claims that counsel should have investigated Stephanie Berroth, Antoinette Balzer and Douglas Szewczk because "he may have unearthed invaluable information or obtained notable leads to other invaluable information."  Memorandum at 72.  A review of the police statements made by these individuals reveals only that they heard various rumors about Mirenna's death, including rumors that other individuals were responsible.  Their statements to the police contain inadmissible hearsay with respect to this issue.  Importantly, Petitioner has not indicated what evidence his

26

counsel should have discovered had he been more diligent in investigating these three individuals.

In this regard, the Petitioner has the burden of setting forth sufficient facts to support each claim. Moreover, Rule 2(c) of the Rules Governing Habeas Corpus Cases, 28 U.S.C. § 2254, expressly provides, in part, that the petitioner "shall set forth in summary form the facts supporting each of the grounds" specified in the petition. Bald assertions and conclusory allegations do not afford a sufficient ground to provide habeas relief. <u>Mayberry v. Petsock</u>, 821 F.2d 179, 185 (3d Cir.), *cert. denied*, 484 U.S. 946 (1987).

There simply is no basis to conclude that investigation of these individuals would lead to any admissible evidence, let alone evidence that proves that the result of the proceeding would have been different had it been admitted. Thus, Petitioner has not demonstrated that he is entitled to relief with respect to this claim.

## K. <u>Suppression Hearing</u>

Petitioner's ninth claim is that his trial counsel was constitutionally ineffective for failing to conduct any pretrial investigations in preparation for the suppression hearing. The Supreme Court has recognized that counsel may render ineffective assistance by failing to pursue a pretrial motion. In <u>Kimmelman v. Morrison</u>, 477 U.S. 365 (1986), the Court determined that a habeas petitioner could raise a claim of ineffective assistance when his trial counsel failed to file a timely pre-trial motion to suppress evidence allegedly obtained in violation of the

Fourth Amendment.  Notwithstanding, the Court instructed that the mere failure to file a timely suppression motion does not constitute *per se* ineffective representation.  <u>Kimmelman</u>, 477 U.S. at 383.  To demonstrate actual prejudice under the second prong of the <u>Strickland</u> test, a petitioner must prove that the Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence.  <u>Kimmelman</u>, 477 U.S. at 375.

Applying <u>Kimmelman</u> to the issue at hand, in order to prove his counsel was ineffective, Petitioner must set forth evidence that his counsel failed to discover that would have resulted in a different outcome at his suppression hearing.  Petitioner has not set forth any evidence in this regard and, therefore, his claim is without merit.

### L. <u>Immunity Deal</u>

Next, Petitioner claims that the prosecution committed misconduct by suppressing an immunity deal given to the state's witness, Todd Erfort, for his testimony.  This claim is factually without merit as the prosecution told the jury about Erfort's immunity during his closing argument.  TT. 609.  Thus, Petitioner is not entitled to relief as to this claim.

### M. <u>Failing to Investigate Immunity Deal</u>

Petitioner's eleventh claim is that his trial counsel was ineffective for failing to investigate into the aforementioned immunity deal.  Again, the basis for this claim is belied by the record as the issue was fully disclosed and explored at trial.

TT 276-277, 279-281.  Consequently, the claim is meritless.

### N. Failure to Object to Photographs

Petitioner's final claim is that his trial counsel rendered ineffective assistance by failing to object to the admission of all the gruesome and inflammatory photographs entered into evidence for the jury's viewing in light of the fact that police officers and the coroner testified to the dismemberment.  In Pennsylvania, the admission of photographs is a matter vested within the sound discretion of the trial.  Commonwealth v. Solano, 906 A.2d 1180, 1192 (Pa. 2006).  Photographic images of the injuries inflicted in a homicide case, although naturally unpleasant, oftentimes are particularly pertinent to the inquiry into the intent element of the crime of murder.  Id.  A two-step analysis applies to determine admissibility.  First, the court must determine whether the photograph is inflammatory.  Next, the court must consider whether the evidentiary value of the photograph outweighs the likelihood that the photograph will inflame the minds and passions of the jury.  Id.  "Even gruesome or potentially inflammatory photographs are admissible when the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors."  Id. (citation omitted).

In order to prove his counsel was ineffective, Petitioner must set forth evidence that, had trial counsel raised an objection to the photographs, the judge would have ruled them inadmissible.  In Petitioner's case, the photographs were directly relevant to the charge of abuse of a corpse.  While

29

Petitioner asserts that his counsel should have agreed to plead guilty to that charge, there is no indication that he would have pleaded guilty, or that the Commonwealth would have accepted a plea, in light of the pending murder and robbery charges. Petitioner has not set forth any evidence to support his position and, therefore, his claim is without merit. *Cf*. <u>Government of Virgin Islands v. Albert</u>, 241 F.3d 344, 349 (3d Cir 2001) (holding that the admission of a graphic videotape was not an abuse of discretion because it was significantly probative).

## O. <u>Certificate of Appealability</u>

The Antiterrorism Act included several major reforms to the federal habeas corpus laws.  Section 102 of the Antiterrorism Act (28 U.S.C. § 2253(c) (as amended)) codifies standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Amended Section 2253 provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."

Petitioner has not made any showing that he was denied any of his constitutional rights.  Accordingly, a certificate of appealability should be denied.

## III. <u>CONCLUSION</u>

For the foregoing reasons, it is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have seven (7) days from the date of service of the objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights.


                              /s/Susan Paradise Baxter
                              Susan Paradise Baxter
                              Chief U.S. Magistrate Judge


December 7, 2006